## WERNER v ROWLEY

Ohio Appeals, 2nd Dist, Montgomery Co

No 1220.   Decided July 22, 1935

Wilbur E. Benoy, Columbus, and Raymond
G. Brown, Columbus, and Heald, Zimmer-
man, Clark & Machle, Dayton, for plain-
tiff in error.

Gus W. Byttner, Dayton, and Swaney &
Creager, Dayton, for defendant in error.

## OPINION

By HORNBECK, J.

The question for determination is whether or not, upon all of the facts and circumstances in this record, the verdict of the jury and judgment of the trial court are clearly and manifestly against the weight of the evidence. As long as courts have pronounced opinions it has been a recognized principle that the credibility of witnesses in a law case is peculiarly for the determination of the jury, which is the tryer of the facts. So long as there is real conflict in the evidence the verdict should not be set side. Hornbeck and Adams Trial and App. Practice 208-209. 2 O. Jur., 761 and two pages of cited supporting authorities. All of the evidence which we have recounted and the circumstances to which we have adverted were presented to the members of the jury, ten of whom resolved them in favor of the claim of the plaintiff, Another jury unanimously reached a like conclusion. One judge was of opinion that the evidence offered did not support the verdict. Whether or not the facts brought to his attention were identical with those developed in the record which we have before us we do not know. The judge in the second trial, who heard the witnesses and had opportunity to observe them concluded that the verdict as returned was well supported by the evidence. Thus, of twenty-six individuals charged with the duty of weighing the evidence in this case twenty-three of them have resolved it in favor of the plaintiff. We frankly say that had we been the triers of the facts it is probable that we would have found them preponderating in favor of the defendant. This is not enough to require a reversal. Abernathy v The Bank, 5 Oh St, 266. We cannot say, without invading the province of the jury, that, granting the truth of the testimony of the plaintiff and his supporting witnesses, together with the undisputed physical facts, the jury exceeded its prerogative in determining the case in favor of the plaintiff.

On the question of the speed of the automobile, if the plaintiff was correct when he said that he looked to the west and then to the east and then started to cross E. Fifth Street, and that six seconds elapsed

from the time that he first looked until he was struck, and that he saw the automobile which, no doubt, was that of the defendant 413 feet to the west when he first looked, it is probable that the automobile was moving at a rate of speed of approximately forty-two or forty-three miles per hour. The defendant, her brother and a friend, all of whom were of more than average size, were riding in the front seat of the Model "A", 1929 Ford. Whether or not such a rate of speed as forty-two or forty-three miles per hour on a lighted street at the place where the accident occurred was excessive was a question of fact for the jury and it could properly have held that such a rate was excessive and illegal. The fact that the plaintiff was hurled forward some thirteen to thirty feet and the extent to which his body was racked and broken lends support to the theory that the car was moving at a rapid rate of speed, probably greater than twenty-five miles per hour. Likewise, if the plaintiff was moving in a direct line across E. Fifth Street in what would be a projection of the east pavement of N. Montgomery Street, it would seem that defendant's driver should have seen him in time to have taken some steps to have avoided striking him. Whether or not the looking of plaintiff at the time and place where he says he did was timely was a question of fact for the jury.

It is the theory of the defense that because of marks on the left front side of the automobile the probability is that plaintiff ran into the car at the side, but it is not inconsistent with probabilities to say that the plaintiff was struck by the front of the car and lifted over and onto the left side and then hurled forward.

The witnesses had considerable difficulty with directions on the plat, which is not at all unusual nor unexpected. The fact that there is a jog in Montgomery Street as it crosses E. Fifth Street makes the fixing of corners by cardinal points a most difficult undertaking. We have had considerable trouble with the plat.

It should be observed that, although Leslie Swift says that the plaintiff ran out into N. Montgomery Street and cut across E. Fifth Street at an angle violating a city ordinance, he marks the place where plaintiff was struck at what could properly be designated as a cross-walk; so that there seems to be little variance in the testimony to the effect that when struck the plaintiff was on the cross-walk from the northeast corner of North Montgomery and East Fifth Streets.

Ordinarily we attach no significance to the inability of a witness to describe the clothing or type of head covering that an individual about whom they were testifying wore, yet when a police officer, who is experienced in testifying and in apprehending offenders and in investigating accidents and other occurrences expressly states how one is dressed, the color of his clothing, type of hat that he wears, he is presumed to know whereof he speaks but all of the witnesses who testified on the subject, save Officer Moore, said that the plaintiff wore a blue suit on the night of the accident. Officer Moore says he wore a brown suit. Plaintiff says he had no hat on. Officer Moore says he had on a cap. Officer Moore says that plaintiff walked from the smokery north on Montgomery Street, and that he there talked with the plaintiff. Michael O'Riley, although not expressly so stating, leaves the impression that the plaintiff, upon moving out of the poolroom, immediately went over and across Fifth Street. The jury may have doubted if Officer Moore saw the plaintiff when and where he says he did.

On the question of the intoxication of the plaintiff the jury was well within its province in resolving the testimony in favor of the plaintiff. The statements of Mrs. Pulasky and of Dr. Dooley may properly have been accepted as the true version of this controverted question. They were in such relation to the plaintiff and had such opportunity to observe his physical condition as to have been informed whether or not he had been drinking.

Upon a full and careful consideration of the evidence most of which we have discussed, we cannot say that the verdict and judgment is unsupported by or manifestly against the weight of the evidence.

The judgment will, therefore, be affirmed.

BODEY, J, concurs.

BARNES, PJ, dissents for the reason that, in my judgment, the weight of the evidence supports contributory negligence as proximate cause of accident.